John Enright, Respondent, *v.* The American Belgian Lamp Company, Appellant.

*Action to recover for the loss of profits which would have accrued but for defendant's default — proof insufficient to sustain it.*

A complaint in an action demanded damages for a loss of profits which would have resulted from the manufacture and sale of goods, in which it was necessary to make use of certain patented articles which the plaintiff had loaned to the defendant, and the defendant, on demand, had refused to return. It appeared that the plaintiff had had at all times a large amount of the goods on hand, and he gave no proof that if he had had others he could have sold them. *Held,* that, under the circumstances, the plaintiff was not entitled to recover for the loss of resultant profits.

Appeal by the defendant, The American Belgian Lamp Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 11th day of February, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 1st day of

March, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Charles F. Brown* [*J. Stewart Ross* with him on the brief], for the appellant.

*K. C. McDonald*, for the respondent.

GOODRICH, P. J.:

The action is brought to recover damages for the failure of the defendant to return certain articles which were loaned to it by the plaintiff. The issues were submitted to the jury, which rendered a verdict for the plaintiff. As there were no exceptions to the charge, we are only called upon to decide the questions which arise upon exceptions to the admission and rejection of evidence and to the refusal of the court to dismiss the complaint made on the close of the evidence, on the ground " that no cause of action has been made out, and that there is no such preponderance of evidence upon the claim of special damages that would warrant sending it to the jury."

The plaintiff was a manufacturer of lamps in the city of New York, and the defendant was an importer and manufacturer of similar articles. There had been a fire in the defendant's establishment, and the underwriters took charge of and sold to the plaintiff, at auction, the articles in question, which were known as collars, feeder screws, fillers, etc., and were used in the manufacture of lamps. In August, 1894, and at various times thereafter, up to January 15, 1895, the plaintiff loaned to the defendant, at its request, a large number of these articles, and there is evidence tending to show that, at the time of this loan, the defendant knew that the plaintiff was engaged in manufacturing lamps, and that he used the articles in connection therewith. At the time of the first loan, on August 27, 1894, a receipt for the articles was given by the defendant, in which it was stated: " We agree to return to him sometime during the month of September, 1894." The subsequent receipts did not contain any mention of a time during which the articles were to be returned, and there is conflicting evidence on the subject, the defendant claiming that they were to be returned only on demand, and after reasonable time to import from Belgium where the articles were manufactured under a patent.

It will be observed that this action is not brought to recover damages for the simple value of the loaned articles, but for damages resulting to the plaintiff from his inability to use the articles in the manufacture of lamps, it being claimed that, by the omission of the defendant to return the articles, the plaintiff was prevented from manufacturing, and thereby lost profits which he might have received on the sale of the completed lamps. The law applicable to such an action was well stated in the charge of the learned justice who presided at the trial. He stated, among other matters, as follows: " In the first place it is necessary, under such circumstances, for a plaintiff to prove, as matter of fact, that he did in good faith intend to manufacture the article referred to; to put together these homogeneous parts and make the marketable article to sell; that the person who borrowed from him knew that fact at the time of borrowing, and that, therefore, the possibly enhanced damage which might result from a failure to carry out the bargain and return the articles was contemplated by both parties at the time; that the person to whom he made the loan has failed to live up to the terms of the agreement under which the loan was effected; that there was such a market as would have enabled the lender to sell his articles readily, if he had manufactured them or put them together, and that he would have made the profit which he asserts is the measure of his loss."

On July 1, 1895, the plaintiff made a formal demand that the goods be returned on or before July tenth. The action was commenced on August ninth. The answer was served on August twenty-ninth, and on that day, for the first time and forty days after the demand, the defendant wrote the plaintiff notifying him that a part of the articles had arrived from Belgium and were held subject to his order, and that it expected the balance of the goods to arrive by the middle of September. There is no evidence of any subsequent arrival of the goods, nor of any offer to deliver them, and the offer referred to was made twenty days after the suit was commenced. The answer contained an allegation that the goods had not arrived at the time of the commencement of the action, but that some had arrived and the remainder were expected shortly. The evidence shows that there was cable communication with Belgium, and that mail and transportation time is about ten days. The

defendant was bound, under any circumstances, to use reasonable diligence to fulfill its obligations, and this question was submitted to the jury. The court charged: "Because if the defendant, when informed finally that the plaintiff wanted these articles back, did attempt to procure them from Belgium, and this suit was brought before it had a reasonable opportunity, in your judgment, to procure them and return them to the plaintiff, then, of course, upon that branch of the case the plaintiff fails. You must find all of these things in favor of the plaintiff by a preponderance of evidence to entitle him to a verdict at your hands. If you find any of these questions in favor of the defendant, then the defendant is entitled to a verdict."

It does not appear that the goods could not have been obtained within the forty days, and there was sufficient evidence to justify the jury in finding that reasonable diligence was not used by the defendant to comply with its obligations.

This brings us to the question whether there is evidence sufficient to establish the amount of damages found by the verdict. It is true that actions of this character cast upon the plaintiff a serious burden of proof, as it is impossible for a party always to establish exactly and precisely the amount of his damages, but with this difficulty he must contend. He must show with reasonable certainty that he could have disposed of the manufactured goods, or, possibly, that he was prevented from doing so by some act of the defendant. There is evidence that the articles were patented, and that the defendant controlled the market, and this may afford a reason why the plaintiff did not make up the goods, or was unable to prove that he could have sold his goods, but this condition of things was the same, both at the time when the plaintiff purchased the burners at the sheriff's sale and when the defendant failed to return them.

The difficulty in the case arises from the plaintiff's failure to show that, before the action was commenced, he tried to sell the manufactured lamps, or could have sold them, if he had had them on hand. It appears that he had 700 or 800 lamps which he had not sold. It is true that he says that these were used by him in his retail trade, but it nowhere appears that he tried to sell, or could have sold, any greater number at wholesale, if he had had them to sell, and it also appears that he had enough of the loaned articles on hand to make

up about 100 lamps, and this he had not done. There is evidence that there was a market for lamps, but whether at wholesale or retail did not clearly appear, and the fact that there was a market for such lamps does not dispose of the question, as there was no evidence that the plaintiff could have sold his lamps if he had had them in hand, or that the company was not supplying the entire market demand. Indeed, it would seem from the evidence of the plaintiff that the patented character of the articles and the control of the market by the defendant interfered with and prevented sales. The proof of a market price for the goods would have been sufficient evidence if the action had been for the value of the articles, but it is not sufficient in an action for the loss of resultant profits from the expected manufacture of the goods.

We do not think that this was evidence sufficient to show that any damages had resulted to the plaintiff from the failure of the defendant to return the articles in question. The motion to dismiss the complaint, on the ground that there was not sufficient evidence as to special damages, should have been granted, and this renders unnecessary any further consideration of the other questions in the case.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

Woodward, J., concurred.

Hatch, J.:

I concur in the result reached in this case, upon the ground that the complaint seeks the recovery of special damage for the loss of profits on account of the defendant's failure to return the articles which it had borrowed. In this view there was not only an entire failure of proof to show any loss of profits, but there was affirmative proof to show that the plaintiff suffered no loss on that account. He had at all times a large number of lamps on hand which he did not sell. If he did not and could not sell what he had, how could he lose profits upon an addition to that stock? The more lamps he had on hand, the greater would be the carrying charge, and, instead of enabling him to earn profits, would impose a further loss. There is nothing in the case to show the value of the

articles which were loaned, and consequently no basis upon which a recovery could be had for their value, nor is the complaint framed upon that theory. There is, therefore, no ground for the recovery which has been had.

BARTLETT, J., concurred; CULLEN, J., concurred in the result.

Judgment and order reversed and new trial granted, costs to abide the event.