### ENRIGHT v. AMERICAN BELGIAN LAMP CO.

(Supreme Court, Appellate Division, Second Department.     January 17, 1899.)

1. CONTRACTS—DELAY—DAMAGES.
   Where defendant, who had borrowed from plaintiff a large number of parts used in the manufacture of a lamp burner, owned the patents on a number of the parts, so that plaintiff could not sell the burners manufactured therefrom, the latter cannot recover special damages for delay in returning the borrowed parts.

2. SAME—EVIDENCE.
   In an action for damages for failure to return parts of a lamp burner which defendant had borrowed to manufacture into burners, where the pleadings show that the burner as a whole was patented by defendant, evidence as to what parts were patented by him is admissible.

3. APPEAL—EVIDENCE—GROUNDS OF OBJECTION.
   A ground for the exclusion of evidence not raised at the time of the objection to its admission will not be considered on appeal.

4. PATENTS—BEST EVIDENCE.
   In an action for damages for delay in furnishing borrowed parts of an article to be manufactured, where the defense is that the parts were patented by defendant and therefore could not have been used by plaintiff if he had received them, plaintiff may be asked on cross-examination if the parts were not patented, without an introduction of the letters patent.

5. CONTRACTS—DAMAGES—BURDEN OF PROOF.
   Where plaintiff claims special damages by reason of defendant's delay in returning parts of lamp burners borrowed from him to be used in manufacturing the burners, the burden is on him to show that he could not have obtained the parts from other makers.
   Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by John Enright against the American Belgian Lamp Company.     From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals.     Reversed.

The appellant is the manufacturer of the "Belgian Lamp."     Certain parts of this lamp, which constitute the burner, were manufactured at Liege, Belgium, under Belgian patents, and the appellant is the sole American agent of the patentee for the sale of the burners.     In 1894 a fire occurred in appellant's

establishment, and thereafter the respondent purchased a large quantity of parts of the lamp and burner at an auction sale made by the underwriters upon the burned stock. The parts so purchased were complete, and suitable for assembling and putting together to make complete burners. In August, 1894, and at various times thereafter up to January 16, 1895, the appellant borrowed from the respondent certain of the parts of burners. The allegations of the complaint are that the appellant agreed to return the articles borrowed upon demand; that it was the purpose of the respondent to use the articles borrowed in the manufacture and sale of lamps, and that this purpose was communicated to the appellant; that demand was made for return of the borrowed articles and refused, and that the respondent had thereby been prevented from realizing a profit of about one dollar per lamp which he would have made upon the sale of the manufactured article. Upon the trial there was a verdict in favor of the respondent for $2,000, which the court reduced to $1,700. A motion for a new trial was made, and denied upon the judge's minutes, and, judgment having been entered, this appeal is taken from the judgment and from the order.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles F. Brown (J. Stewart Ross, on the brief), for appellant.
K. C. McDonald, for respondent.

WILLARD BARTLETT, J. The main question in this case is whether the plaintiff really suffered any damage by reason of the defendant's failure seasonably to return the burners and parts of burners which it had borrowed, and the answer to this question depended largely upon the use which the plaintiff would have been able to make of these articles if they had been duly returned to him. If they were covered by a patent so as to be practically unavailable for sale in his hands, he could have suffered no damage by reason of the action of the defendant in withholding them, save the actual value of the material which entered into their composition. For this reason it seems to me that it was clearly erroneous for the court to hold, as it did during the cross-examination of the plaintiff, that it would not permit the defendant to prove what parts of the lamp were covered by a patent belonging to the Belgian Lamp Company or controlled by that corporation. The error was repeated during the direct examination of the secretary and manager of the defendant. It is sought to sustain the exclusion of this evidence on the ground that the pleadings presented no issue as to the parts of the lamp which were or were not patented, and, furthermore, that the record does not disclose the character of the proof which was offered to establish the existence of the patent, and does not show that the letters patent themselves were produced in court. The complaint alleges, and the answer admits, that the lamp burners in controversy were patented articles. This allegation and admission evidently applied to each burner considered as a whole, but had no reference to the component parts. As to such parts it was not necessary that there should be any averment in the pleadings. The question whether any particular part was patented or not was important solely as bearing upon the measure of damages, and the evidence was admissible in that view, even though nothing was said on the subject in the pleadings. As to the nonproduction of the letters patent, the objection to the proposed proof was not based on that ground; and, even if it had been, I think that it was competent to prove, by the cross-

examination of the plaintiff, the fact, if it were a fact, that he knew the articles to be patented. I am unable, therefore, to agree with the learned presiding justice that no error was committed in excluding the evidence which the defendant sought to introduce for the purpose of showing precisely what parts of the Belgian lamp were patented, and to show that the Belgian Lamp Company was the patentee thereof. On the contrary, I think it was an error which requires a reversal of the judgment. All concur, except GOODRICH, P. J., dissenting.

CULLEN, J. (concurring). Undoubtedly the plaintiff was entitled to recover the value of the articles which he had loaned the defendant and which had not been promptly returned according to agreement. But he was not satisfied with such a measure of recovery, and insisted upon proving special damages from the fact that the absence of these parts prevented him from making up complete burners which had a high value in the market. It seems to me that it was incumbent on the plaintiff, himself, before he could establish such a measure of damages, to show by the letters patent that the absence of the loaned parts prevented him from finishing the burners. If there was no patent on these particular parts, but only on the burners themselves, I can see no reason why he could not have obtained the parts from any other maker, and why his measure of damages was not the value of the articles. The judgment should be reversed, and a new trial granted; costs to abide the event.

GOODRICH, P. J. (dissenting). The main facts in this case will be found in the opinion of this court on a former appeal (26 App. Div. 381, 49 N. Y. Supp. 739), and it is not necessary to repeat them here. It will be observed that it was stated in the opinion of the presiding justice on that appeal that the action was not brought to recover the value of certain articles which were component parts of the Belgian lamp, but to recover "damages resulting to the plaintiff from his inability to use the articles in the manufacture of lamps, it being claimed that, by the omission of the defendant to return the articles, the plaintiff was prevented from manufacturing, and thereby lost profits which he might have received on the sale of, the completed lamps." The former judgment for the plaintiff was reversed because we held that there was no evidence sufficient to show that any damage had resulted to the plaintiff from the failure of the defendant to return the articles in question. This was emphasized in the opinion of Mr. Justice Hatch, where he said that there was affirmative proof that the plaintiff had suffered no loss, as he had a large number of lamps on hand which he did not sell, and, if he did not and could not sell them, he could not lose profits upon an addition to the stock in hand. At the last trial the plaintiff supplied this defect by the evidence of two witnesses that in July, 1895, they had applied to the plaintiff to purchase 2,000 lamps, stating the price they were willing to pay therefor. There was no testimony of other witnesses to contradict this fact, and, while there was some evidence tending to impeach these witnesses, the question of fact testified to by them was fairly submitted to the jury, and

their verdict must stand unless certain exceptions to the exclusion of evidence and to portions of the charge are tenable. The complaint alleges that the "lamp burners were patented articles," and that the defendant was "patentee of said burner, or agent of the patentee." The answer admits that the defendant "imported the lamp burners mentioned, and that the same were patented articles." The court also spoke of the "patented lamp burner" and "patented burner," and referred to the articles as "component parts of the patented burner," so that it seems to have been the theory of both parties and of the court that there was no question at the trial that the patent covered the completed burner and did not relate to the parts unassembled. Upon the cross-examination, the plaintiff said that when he bought the articles at the auction sale of the underwriters he knew that some parts of the burner, not the lamp itself, were patented. He was then asked:

"Q. I show you a paper, and ask you whether or not that does not represent the patent of the parts of this lamp which are patented. A. I can only tell by reading it in detail. Of course, I never have seen it. Q. Read it in detail. (Objected to as immaterial and incompetent. The Court: I will permit you to show that any of the component parts going to make the complete entire was governed by the patent held by some one else than the Belgian Lamp Company [sic]. Mr. Ross: That is not what I claim. The Court: Then I will sustain the objection. Exception.)"

Dawans, one of the defendant's witnesses, on direct examination, was testifying as to the burner and its several parts and construction, when the following examination took place:

"By Mr. Ross: Q. Any part of that patented? (Objected to as immaterial and incompetent. Objection sustained. Exception.) Q. Are all of the parts you have just mentioned patented, or are only some of them patented? (Objected to as immaterial and incompetent. Objection sustained. Exception.)"

The counsel for the appellant contends that these rulings constitute error, as—

"The defendant had a clear right to show precisely what parts of the lamp were patented, and that the Belgian Lamp Company was the patentee. The plaintiff had alleged that the parts were imported from Belgium, and were patented, and that the defendant was the patentee, or agent of the patentee. The defendant should have been allowed to supplement this proof by showing exactly what the patent covered."

The difficulty with this contention is that the pleadings contained allegation and admission that "the lamp burners were patented articles." Upon this question there was no issue before the jury; there was no allegation in the pleadings that any of the parts were patented; so that any evidence on that subject was properly excluded. In addition to this, we are not advised by the record what was the character of the evidence offered to prove the existence of any patent. There was a paper presented to the plaintiff, and he was asked if it did not represent the patent of the parts of the lamp which were patented, but what that paper was does not appear. Even if it would have been competent for the defendant to prove the existence of any patent, that should have been proved by the production of the letters patent, and it is enough to say that we cannot assume—what the record does not show—that the paper referred

to was the letters patent. Indeed, I think we may assume the contrary from the remarks of the learned judge and the counsel. In the second quotation the defendant seems to have been endeavoring to prove by parol evidence that some or all of the parts of the burner were patented. As we have before said, the existence of a patent is to be proved by production of the letters patent or by a certified copy. 2 Greenl. Ev. (15th Ed.) § 488; Code Civ. Proc. §§ 952, 953. It is very difficult to ascertain from the record whether the defendant claimed that the patent covered the different parts of the burner or the assembling of the component parts, but in either case it has failed to offer competent proof of the existence of any letters patent to vary the allegation and admission of the pleadings. I have carefully examined the other exceptions, and find no error in any of the rulings thereon, and I think the judgment and order appealed from should be affirmed.